UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lawrence R. Tracy, | No. 2:11-cv-02431-MCE-DAD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| Aleph America Corp. and Aleph Int'l Corp. , | |
| Defendants. | |

----oo0oo----

Before the Court are Defendants' Motion to Dismiss (ECF No. 4), Plaintiff's Motion to Remand and Request for Attorney Fees (ECF No. 8), and Defendants' Motion to Disqualify Severson & Werson (ECF No. 16), the law firm representing Plaintiff.[1] The motions are fully briefed. For the reasons that follow, the Motion to Remand and Request for Attorney Fees (ECF No. 8) is GRANTED.

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

The case is remanded to the Superior Court of California, County of Placer, and the remaining motions are DISMISSED as moot.

**BACKGROUND**[2]

In July 2011, Plaintiff Lawrence R. Tracy ("Tracy") filed his Complaint in the Superior Court of California, County of Placer. Tracy's Complaint alleges he was wrongfully terminated by both Aleph International Corporation ("AIC") and Aleph America Corporation ("AAC") (collectively, "Defendants"), essentially simultaneously, from positions he held with both companies. His Complaint states causes of action against both Defendants for (1) wrongful termination in violation of public policy under the doctrine established in Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980); and (2) unfair competition in violation of California's Business & Profession Code Sections 17200 et seq.

Tracy, a California resident, alleges that in November 2004 he was hired as Chief Executive Officer of AIC, a California Corporation and, several months later, he became AIC's President. Tracy asserts that he was hired by AAC, a Nevada Corporation, in February 2005, as Chief Executive Officer and President. Tracy also alleges that he was on the Board of Directors of both AIC and AAC.

///
///
///

---

[2] Unless otherwise noted, the facts are taken from Tracy's Complaint. See ECF No. 2, Ex. 1.

AIC and AAC are both in the electronics business, are apparently related organizations, and there is allegedly some overlap between executives of the two companies, however, the precise relationship of the two companies is undefined in the Complaint.

Tracy contends that during the course of his employment with AIC and AAC he became concerned with various transactions undertaken by both companies. In his view, these transactions potentially violated both state and federal laws. In addition, Tracy alleges that management ordered him to falsify shipment documents. He alleges that he repeatedly brought his concerns regarding these activities to AAC and AIC's senior management, but that his attempts were repeatedly ignored or rebuffed. In January 2010, Tracy contends that, as a result of his repeated efforts to alert senior management of the issues regarding the potentially unlawful transactions, he received termination letters from both AIC and AAC. Thereafter, in July 2011, Tracy filed his Complaint.

On September 14, 2011, Defendants removed on the basis that the California corporation, AIC, was a "sham defendant," fraudulently named by Tracy to defeat diversity jurisdiction. ECF No. 2. Therefore, according to Defendants, there was diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the actual dispute was between Tracy, a California citizen, and AAC, a Nevada Corporation, and the amount in controversy was greater than $75,000. Defendants did not explain why AIC was a "sham defendant."

///
///

3

Then, on September 22, 2011, Defendants filed a second Notice of Removal. ECF NO. 5. In their second notice, Defendants repeated their contention that AIC had been fraudulently joined to defeat diversity jurisdiction, but added the additional argument that the Court has original federal question jurisdiction over this action. According to Defendants, there is jurisdiction under 28 U.S.C. § 1331 because Tracy's wrongful termination and unfair competition claims both necessarily invoke and require Tracy to prove that Defendants violated federal tax laws. See ECF No. 5 at 2; see also Opposition to Motion to Remand, ECF No. 26, at 4.

Tracy thereafter moved to remand on the basis that (1) AIC is not a sham defendant; and (2) the fact that federal law is implicated in his state law claims does not confer federal question jurisdiction on this court. ECF Nos. 8 (Motion to Remand), 9 (Tracy's Declaration), and 30 (Reply to Opposition to Remand). Tracy also sought attorney fees based on the allegedly improper removal. ECF. No. 8 at 5-6; ECF No. 30 at 8-9.

**ANALYSIS**

**A.   Motion to Remand**

    **1.   Standard**

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a).

///

4

Generally, district courts have original jurisdiction over civil actions in two instances: (1) where there is complete diversity between the parties, or (2) where a federal question is presented in an action arising under the Constitution, federal law, or treaty.  28 U.S.C. §§ 1331 and 1332.

The removing party bears the burden of establishing federal jurisdiction.  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988).  The removal statute is strictly construed, and the court resolves any doubt in favor of remand.  Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009).  If there is any doubt as to the right of removal in the first instance, remand must be granted.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  When a complaint raises only state causes of action, federal-question jurisdiction "is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983).  Therefore, federal-question jurisdiction may nonetheless exist in a complaint that alleges solely state law claims if the complaint necessarily raises a substantial and disputed question of federal law.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308(2005).

5

However, Grable is the rare exception to the general rule that federal-question jurisdiction exists only where there is a federal cause of action.  See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006).  The mere presence of a federal issue in a state suit does not, by itself, give rise to federal-question jurisdiction.  Id. At 701.

    **2.**    **Analysis**

        **a.**    **Diversity Jurisdiction**

Defendants contend that AIC is a "sham defendant," joined to defeat diversity jurisdiction.  They bear the burden on this issue.  See Ethridge, 861 F.2d at 1393 ("The party invoking the removal statute bears the burden of establishing federal jurisdiction." (citation omitted)).

To the extent that Defendants may be contending that AIC does not exist, did not employ Tracy, or is not located in California – in other words, that there is actual fraud in Tracy's pleadings – they have offered nothing that would support such contentions.  In contrast, Tracy has submitted a declaration which asserts that AIC is a California corporation, that he was employed by both AIC and AAC, that he raised concerns about certain activities both companies allegedly engaged in, and that he was wrongfully terminated because he raised concerns about these transactions.  See ECF No. 9; see also ECF No. 2.

///
///
///

In addition, Tracy included two exhibits to his declaration: (1) a letter that purports to be from Suguru Horinouchi, listed as President of AIC, terminating Tracy's employment with AIC and terminating his membership on AIC's Board of Directors, see ECF No. 9, Ex. A; and (2) a letter that appears to be from a law firm representing AIC regarding a property transaction, which states that AIC is a California corporation, see ECF No. 9, Ex. B.

In their Opposition, Defendants do not challenge the veracity of any of Tracy's contentions or documents regarding the existence or location of AIC, or Tracy's employment with AIC. Instead, Defendants assert that AIC was fraudulently joined because Tracy has not, and cannot as a matter of law, state a valid claim against AIC. See ECF No. 26 at 9-11; see also, second Notice of Removal ECF No. 5 at 3.

"[O]ne exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder occurs "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) (alteration in original)). Where this occurs, the court may ignore the presence of that defendant for the purpose of establishing diversity. Morris, 236 F.3d at 1067.
///
///
///

Where removal is based on plaintiff's alleged joinder of a sham defendant "'if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" Hunter v. Phillip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009). In removing a case based upon fraudulent joinder, the defendant must make a "showing . . . such as compels the conclusion that the joinder is without right and made in bad faith. . . ." Chesapeake & O.R. Co. v. Cockrell, 232 U.S. 146, 152 (1914). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." See McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

Defendants contend that AIC has been fraudulently joined because Tracy allegedly failed to sufficiently plead all of the elements of his wrongful termination claim. ECF No. 26 at 9-11. Defendants do not directly address Tracy's unfair competition claims. Id. at 9-11; see also ECF No. 5. However, they appear to be relying on arguments raised in their Motion to Dismiss, see ECF No. 4, which alleges that, as a matter of law, Tracy has not and cannot state his claims for wrongful termination or unfair competition against both AIC and AAC. In any event, in discussing the merits of Tracy's arguments against AIC, Defendants necessarily are arguing the merits of Tracy's claims against both companies because Tracy's claims against both companies are identical.

8

However, the Ninth Circuit has rejected a similar argument where a defendant asserted that an in-state defendant was improperly joined on the basis that the plaintiff's claims were preempted, when the preemption argument could apply equally to either the in-state or out-of-state defendant, stating:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such—an allegation that, as phrased by the Supreme Court in Chesapeake [232 U.S. at 153], "the plaintiff's case [is] ill founded as to all the defendants."

Hunter v. Philip Morris USA, 582 F.3d 1039, 1044-45 (9th Cir. 2009) (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004) and adopting its reasoning). In Hunter, the Ninth Circuit stated that "the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the 'strong presumption against removal jurisdiction.'" Id. at 1045 (quoting Gaus, 980 F.2d at 566).

Similarly here, Defendants' arguments go to the merits of Tracy's claims against both AIC and AAC and, in particular, the federal tax law issues apply equally to both AAC and AIC.

///
///
///

9

This supports the conclusion that removal is improper under Hunter, because Defendants' arguments are identical as to both AIC and AAC, therefore the allegation of improper joinder is actually a cloaked attack on the merits of plaintiff's case. See Hunter, 582 F.3d 1044-45.

However, even considering the merits of Defendants' arguments regarding the insufficiency of Tracy's Complaint as to AIC, they are unpersuasive, particularly given the strong presumption against removal jurisdiction. Specifically, Defendants assert that Tracy has failed to sufficiently allege three out of the five elements of a Tameny wrongful termination claim. ECF No. 26 at 9-11; see also ECF No. 5. In Tameny, 27 Cal. 3d 167 (1980), the California Supreme Court held that a wrongful termination action could lie against an employer who terminated an employee who refused to commit a criminal act, noting "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act . . . reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes." Tameny, 27 Cal.3d at 176.

Defendants state there are five elements to a Tameny wrongful termination claim: (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination violates an important public policy that is based on a statutory or constitutional provision; (4) the plaintiff suffered harm; and (5) the termination was the legal cause of that harm.

///

1  See ECF 4 at 4-5 (citing Holmes v. Gen'l Dynamics Corp.,
2  17 Cal. App. 4th 1418, 1426 (1993)); ECF No. 26 at 3.  Defendants
3  assert that Tracy has failed to sufficiently allege all but the
4  first two elements; that he was employed by AIC and AAC, and that
5  he was terminated by both companies.  However, Defendants appear
6  to recognize that Tracy could amend his Complaint to detail the
7  harm he suffered (elements 4 and 5), see ECF No. 26, at 2, so
8  their arguments focus on their contention that Tracy has not and
9  cannot state a fundamental California public policy at issue.
10 See ECF No. 9-11.
11      Tracy alleges that the significant California public
12 policies at issue are: (1) that both California and federal laws
13 are complied with (he cites the federal tax law, 28 U.S.C. § 482,
14 as an example); and (2) that actions taken by a corporate entity
15 must comply with the necessary statutory requirements authorizing
16 such action (citing Cal. Corp. Code §§ 1000, 1001 as an example).
17 Defendants first focus on the federal tax law, 28 U.S.C. § 482,
18 and argue that Tracy cannot state a claim under 28 U.S.C. § 482
19 under the facts alleged here.  ECF No. 26 at 9-10; ECF No. 4 at
20 5-8.  Similarly, Defendants contend that Sections 1000 and 1001
21 of the California Corporations Code, which generally deal with
22 commercial asset sales, are inapplicable here because Tracy has
23 failed to allege facts that support his contention that an
24 illegal conveyance took place.
25 ///
26 ///
27 ///
28 ///

11

However, Defendants' arguments fail to see the forest for the trees. In his Complaint, Tracy alleges that he brought a variety of potentially criminal acts engaged in by AAC and AIC to the attention of the senior management, that senior management ignored these entreaties to comply with the law, and that senior management terminated Tracy's employment as a result of his repeated attempts to alert management and force the company to comply with the law. At this stage of the litigation, and resolving all ambiguities in Tracy's favor, it is not obvious that Tracy has failed to allege facts that could violate fundamental public policies embodied in California's Constitution or statutes. See, e.g., Tameny, 27 Cal.3d at 176 ("an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act . . . reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes"); see also Hunter, 582 F.3d at 1042 (the court "resolves all ambiguity in favor of remand"). So, there is no reason to conclude that the in-state Defendant, AIC, was fraudulently joined, particularly given "the strong presumption against removal jurisdiction and the 'general presumption against fraudulent joinder.'"[3] Id. at 1047 (quoting Hamilton Materials, 494 F.3d at 1206).

///

---

[3] Because the Court concludes that there is no basis to find that Tracy fraudulently joined AIC vis-a-vis its wrongful termination claim, the Court will not address Defendants' arguments regarding Tracy's unfair competition claim, which were raised in their Motion to Dismiss, but not discussed in their Notice(s) of Removal or Opposition to Remand. See ECF Nos. 2, 4, 5 and 26.

In sum, the Court rejects Defendants' argument that there is diversity jurisdiction based on Tracy's improper joinder of AIC.

### b.     Federal Question Jurisdiction

Defendants next contend that this Court has federal-question jurisdiction because Tracy's wrongful termination and unfair competition claims necessarily raise issues of federal tax law, therefore federal question jurisdiction exists under the analysis set forth in Grable & Sons v. Darue, 545 U.S. 308 (2005). Grable involved plaintiff's quiet title action following the seizure of plaintiff's property by the Internal Revenue Service ("IRS") and subsequent sale of that property by the IRS to the defendant. 545 U.S. at 310. Although the plaintiff brought the action in state court, the Supreme Court held that removal was proper on the basis of federal question jurisdiction because "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." Id. at 315. In addition, the Supreme Court reasoned that the federal government had a particular interest in ensuring correct interpretation and enforcement of its tax laws in the federal courts. Id.

However, the Supreme Court has stressed that Grable is a narrow exception to the to the general rule that federal-question jurisdiction exists only where there is a federal cause of action.

13

See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006). The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986). Rather, "Grable emphasized that it takes more than a federal element 'to open the arising under door.'" Empire Healthchoice, 547 U.S. at 701 (quoting Grable, 545 U.S. at 313 (internal citation omitted)).

Here, Defendants contend that both Tracy's state law wrongful termination and unfair competition claims fall within the Grable exception because federal tax laws are an essential element of both claims. Specifically, Defendants argue that to prove his wrongful termination claim, Tracy "must show that AAC violated the 28 U.S.C. § 482 or that he had a reasonably based suspicion that AAC violated 28 U.S.C. § 482."[4] ECF No. 5 at 3. Similarly, Defendants argue that, to prove his unfair competition claim, Tracy "may be required to show that AAC violated federal law," which Defendants suggest may include 28 U.S.C. § 482. Id. (emphasis added); see also ECF No. 26 at 6-9. Finally, Defendants contend that Tracy's state law claims could not provide relief in the absence of federal law, therefore, the Court must permit the case to be removed. ECF No. 26 at 7-9.

Even assuming that Defendants are correct that both of Tracy's state law claims necessarily implicate federal tax law, this alone does not confer federal question jurisdiction.

---

[4] Although Defendants omit mentioning AIC, as discussed earlier, the same arguments apply to both AIC and AAC as Tracy's allegations against both companies are identical.

14

As the Supreme Court made clear in Grable, the instances in which a state law claim implicating a federal law cause of action would give rise to federal question jurisdiction would be the rare exception. The facts in Grable gave rise to the exception because:

> Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," United States v. Rodgers, 461 U.S. 677, 709 [](1983), and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.

Grable, 548 U.S. at 315. The Supreme Court reaffirmed Grable's limited application in its decision in Empire Healthchoice, which noted that their federal question was warranted because "Grable presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases." Empire Healthchoice, 547 U.S. at 700. Whereas, in Empire Healthcare, the dispute was "fact-bound and situation-specific." Id. at 701.

///
///

In the present case, both Tracy's wrongful termination and unfair competition claims appear to be "fact-bound and situation-specific," id., as they will turn on factual issues related to Tracy's employment and termination that may implicate both federal and state tax law, but federal tax law does not appear to be the essential element of this case. Specifically, Defendants base their federal tax law contentions on paragraphs 13 and 20 of Tracy's Complaint. See ECF No. 26 at fn. 22. In paragraph 13, Tracy contends that he raised concerns with management regarding the federal tax treatment of AAC and AIC by certain related international corporate entities, but was rebuffed by management. See ECF No. 2 at 9. In paragraphs 20-22, Tracy relates that he grew concerned with a transfer of real property, including the fact that the transfer could potentially violate "various tax laws," but was again rebuffed by management. Id. at 10-11. Tracy presents these issues as examples of the concerns that he raised with AIC and AAC's management. He also alleges other concerns, including that management ordered him to falsify shipment documents, so the federal tax issues are not the sole source of Tracy's allegations. See ECF No. 2 at 8-12. Even the paragraphs implicating federal tax issues may well involve various state laws related to corporate governance obligations because Tracy's essential contention is that because he raised concerns about these particular transactions, he was terminated.

So, unlike the facts in Grable, here, the federal statute is tangentially related to Tracy's wrongful termination and unfair competition claims.

16

1  Although the meaning of one or more federal tax laws may be at
2  issue in proving Tracy's claims, this does not make the federal
3  tax law issues central to the case, nor does there appear to be
4  an important issue of federal law at stake that would make the
5  federal courts a better venue for deciding the case.  See Grable,
6  548 U.S. at 315.

7       Furthermore, there is no merit to Defendants' contention
8  that the Court must exercise federal jurisdiction because Tracy
9  cannot state a state law claim absent the federal tax issues.
10 See ECF No. 26 at 7-9.  Defendants rely on Rains v. Criterion
11 Sys. Inc., 80 F.3d 339 (9th Cir. 1996) in support of this
12 proposition, but Rains does not assist them.  In fact, in Rains,
13 the Ninth Circuit expressly rejected a similar argument.  There,
14 Rains raised California state law claims against the defendants
15 -- including a wrongful termination claim -- that implicated
16 Title VII (42 U.S.C. 2000(e)-2), but the Ninth Circuit rejected
17 the defendants' contention that this reference to federal law
18 converted the state law claims into federal claims.  80 F.3d at
19 342-44.  The Ninth Circuit noted that "It is state, not federal,
20 law that creates the cause of action for wrongful discharge in
21 violation of public policy" and that "[t]he direct and indirect
22 references to Title VII in those two state law causes of action
23 do not make those claims into federal causes of action."  Id.
24 The court went on to state that "When a [state-law] claim can be
25 supported by alternative and independent theories - one of which
26 is a state law theory and one of which is a federal law theory -
27 federal question jurisdiction does not attach because federal law
28 is not a necessary element of the claim."  Rains, 80 F.3d at 346.

17

1  Here, Tracy's Complaint is founded on state law causes of
2 action for wrongful termination and unfair competition.  Although
3 he invokes both California and federal law in support of his
4 wrongful termination and unfair competition claims, the
5 references to federal law do not make those claims into a federal
6 cause of action which would preclude the California courts from
7 adjudicating Tracy's claims.  Id. at 342-46.
8  In sum, the federal tax law issues invoked by Defendants do
9 not give rise to federal question jurisdiction under 28 U.S.C.
10 § 1331, making removal improper under 28 U.S.C. § 1441.

**B.   Attorney Fees**

14  If the district court determines that removal was improper,
15 then the court may also award the plaintiff costs and attorney
16 fees accrued in response to the defendant's removal.  28 U.S.C.
17 § 1447(c).  The court has broad discretion to award costs and
18 fees whenever it finds that removal was wrong as a matter of law.
19 Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106
20 n.6 (9th Cir. 2000).
21  Here, removal was objectively improper and the Court will
22 exercise its discretion to award costs and fees to Tracy.
23 Relying on Tracy's Motion to Remand, ECF No. 8, and the
24 Declaration of Philip Barilovits in support of Tracy's Motion to
25 Remand, ECF No. 10, the Court finds that Defendants are jointly
26 and severally liable for $2475.00, the amount requested by Tracy
27 for costs incurred if the Motion to Remand was opposed, but not
28 argued.

This includes $1375.00 in attorney's fees for the five hours (at $275 an hour) preparing the Motion to Remand and an additional $1100.00 for an estimated four hours in preparing the Reply. See ECF No. 8 at 6; ECF No. 10 at 2.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand and Request for Attorney Fees (ECF No. 8) is GRANTED. The case is remanded to the Superior Court of California, County of Placer, and Defendants are directed to pay Plaintiff $2475 in costs and attorney fees within thirty days or be subject to further sanctions by this Court. Defendants' Motion to Dismiss (ECF No. 4) and Motion to Disqualify Severson & Werson (ECF No. 16) are DISMISSED as MOOT.

IT IS SO ORDERED.

Dated: April 27, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE